IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN S. CLAYTON; FIRST EQUITY HOLDINGS CORP.; STANDARD REGISTRAR AND TRANSFER CO., INC.; DANIEL W. JACKSON; DONALD H. PERRY; CLARK M. MOWER; TIMOTHY J. RIEU; and CHESAPEAKE GROUP, INC.,<br><br>    Defendants,<br><br>    and<br><br>BRYAN DEVELOPMENT, LLC; CAPITAL COMMUNICATIONS, INC.; COMPASS EQUITY PARTNERS, INC.; GREENWICH STREET COMMERICAL MORTGAGE, LLC; INVESTRIO, INC.; KLAJA PARTNERS, LLC; LIBERTY PARTNERS, LLC; and MAESTRO INVESTMENTS, INC.,<br><br>    Relief Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:24-cv-00918<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Dustin B. Pead |

Pending before the court is Defendants First Equity Holdings Corp. and John Clayton (collectively, the Clayton Defendant)'s Motion to Sever,[1] Ancillary Motions to Sever

---

[1] Dkt. 101, *Defendants First Equity Holdings Corp. and John Clayton's Motion to Sever and to Stay Discovery* (*Clayton Defendants' Motion*); *see also* Dkt. 99, *Defendants First Equity Holdings Corp. and John Clayton's Motion to Sever and to Stay Discovery* (redacted version of *Clayton Defendants' Motion*).

incorporating the arguments set for in the Clayton Defendants' Motion,[2] and Plaintiff Security

and Exchange Commission (SEC)'s Motion for Leave to File Amended Complaint.[3]  For the

reasons explained below, the Clayton Defendants' Motion is denied, the Ancillary Motions to

Sever are denied, and the SEC's Motion for Leave is granted.

**BACKGROUND**[4]

This case concerns Defendant John Clayton's alleged "securities fraud scheme to secretly

amass and then illegally sell stock of small, publicly traded companies."[5]  Clayton executed the

scheme through his companies Defendants First Equity Holdings Corp. and Standard Registrar

and Transfer Co., Inc.[6]  Defendants Daniel Jackson, Donald Perry, Clark Mower, Timothy Rieu,

and Chesapeake Group, Inc. aided and abetted Clayton in his scheme.[7]

Clayton allegedly "hid his stock ownership from investors, brokerage firms, and

regulators, by spreading his shares among" several business entities (the Clayton Nominees) "he

secretly controlled."[8]  Clayton retained Rieu and Rieu's investor relations firm Chesapeake

Group, Inc. (collectively, the Chesapeake Defendants) "to promote the stock to investors and to

---

[2] Defendants Donald H. Perry; Standard Registrar & Transfer Co., Inc.; and Daniel Jackson, and Relief Defendants Bryan Development, LLC; Greenwich Street Commercial Mortgage LLC; and Klaja Partners, LLC also seek severance and do so by incorporating the arguments set forth in the Clayton Defendants' Motion.  *See* Dkt. 108, *Defendant Donald H. Perry's Motion to Join First Equity Holdings Corporation and John Clayton's Motion to Sever*; Dkt. 109, *Defendant Daniel Jackson and Relief Defendants' Bryan Development, LLC, Greenwich Street Commercial Mortgage, LLC, and Klaja Partners, LLC's Motion to Sever Proceedings*; Dkt. 111, *Motion and Joinder of Defendant Standard Registrar & Transfer Company, Inc. in Motions to Sever* (collectively, *Ancillary Motions to Sever*).

[3] Dkt. 120, *Plaintiff Securities and Exchange Commission's Motion for Leave to File Amended Complaint* (*SEC Motion for Leave*).

[4] The facts here are drawn from allegations in the Complaint.  Dkt. 1, *Complaint*.   For a more robust factual background, see Dkt. 77, *Memorandum Decision and Order*.

[5]  *Complaint* ¶ 1.

[6] *Id.* ¶ 5.

[7] *Id.*

[8] *Id.* ¶ 1.

increase the price and trading volume of the stock."[9]  Clayton then sold the stock at inflated prices.[10]

The SEC brought this case on December 11, 2024.[11]  Defendants and Relief Defendants answered the Complaint throughout 2025.[12]  On December 17, 2025, the Clayton Defendants filed their Motion.[13]  The Ancillary Motions to Sever were filed on January 7 and 8, 2026.[14]  The SEC filed its Motion for Leave to amend the Complaint on January 16, 2026,[15] which was the deadline to amend the pleadings under the Amended Scheduling Order.[16]  Fact discovery is scheduled to close April 17, 2026.[17]  The Clayton Defendants' Motion,[18] the Ancillary Motions to Sever,[19] and the SEC Motion for Leave[20] are fully briefed and ripe for review.

---

[9]  *Id.*

[10]  *Id.*

[11]  *Id.*

[12]  Dkt. 38, *Answer to Complaint* (Clayton Defendants); Dkt. 39, *Defendant Clark M. Mower's Answer to Complaint*; Dkt. 40, *Answer of Defendant Daniel W. Jackson*; Dkt. 42, *Answer of Relief Defendants Bryan Development, LLC, Greenwich Street Commercial Mortgage, LLC, and Klaja Partners, LLC*; Dkt. 45, *Answer by Relief Defendants Capital Communications, Inc., Compass Equity Partners, Inc., Liberty Partners, LLC, and Maestro Investments*; Dkt. 65, *Answer of Defendants' Timothy J. Rieu and Chesapeake Group, Inc.*; Dkt. 75, *Answer to Complaint by Relief Defendant Investrio, Inc.*; Dkt. 80, *Defendant Donald H. Perry's Answer to Complaint*; Dkt. 81, *Defendant Standard Registrar's Answer to Complaint.*

[13]  *Clayton Defendants' Motion.*

[14]  *Ancillary Motions to Sever.*

[15]  *SEC Motion for Leave.*

[16]  Dkt. 98, *Amended Scheduling Order* at 2.

[17]  *Id.*

[18]  *See Clayton Defendants' Motion*; Dkt. 106, *Plaintiff Securities and Exchange Commission's Opposition to Defendants First Equity Holdings Corp. and John Clayton's Motion to Sever and to Stay Discovery* (*SEC Opposition*); Dkt. 107, *Defendants Timothy J. Rieu and the Chesapeake Group's Opposition to Defendants First Equity Corp. and John Clayton's Motion to Sever* (*Chesapeake Defendants' Opposition*); Dkt. 114, *Defendants First Equity Holdings Corp. and John Clayton's Reply in Support of Motion to Sever* (*Clayton Defendants' Reply*).

[19]  *See Ancillary Motions to Sever*; Dkt. 121, *Plaintiff Securities and Exchange Commission's Omnibus Opposition to Motions to Sever of Donald Perry, Daniel Jackson, Bryan Development, LLC, Greenwich Street Commercial Mortgage, LLC, Klaja Partners, LLC, and Standard Registrar & Transfer Co., Inc.* (*SEC Omnibus Opposition*).

[20]  *See SEC Motion for Leave*; Dkt. 126, *Defendants First Equity Holdings Corp., Investrio Inc., and John Clayton's Opposition to Plaintiff's Motion for Leave to Amend the Complaint* (*Clayton Defendants' Opposition*); Dkt. 130, *Reply in Support of Plaintiff Security and Exchange Commission's Motion for Leave to File Amended Complaint* (*SEC Reply*).

## ANALYSIS

### I.    The Clayton Defendants' Motion Is Denied.

The Clayton Defendants move to sever the claims against them from the claims against the Chesapeake Defendants or, in the alternative, order separate trials.[21]  The SEC and the Chesapeake Defendants oppose the motion.[22]

#### A.  *Legal Standard*

Under the Federal Rules of Civil Procedure, the court should "entertain[] the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."[23]  Nevertheless, Rule 21 permits the court to "sever any claim against a party," and Rule 42 permits the court to "order a separate trial" of any claim for "convenience, to avoid prejudice, or to expedite and economize."[24]  The district court has broad discretion in deciding motions brought under either rule.[25]

"Motions to sever under Rule 21 and motions to bifurcate under Rule 42 implicate similar policy considerations."[26]  Courts determining whether to sever claims or bifurcate trials consider the following factors:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law and fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would

---

[21] *Clayton Defendants' Motion* at 2 & n.1, 5.

[22] *SEC Opposition*; *Chesapeake Defendants' Opposition*.

[23] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

[24] Fed. Rs. Civ. P. 21, 42(b).

[25] *Vivint, Inc. v. Alarm.com, Inc.*, No. 2:15-cv-00392-CW-CMR, 2023 WL 2955648, at *2 (D. Utah Apr. 14, 2023) (stating the "court has virtually unfettered discretion in determining whether or not severance is appropriate" (quoting *Lifetime Prods., Inc. v. Russell Brands, LLC*, No. 1:12-cv-00026-DN-EJF, 2016 WL 5482226, at *3 (D. Utah Sept. 29, 2016))); *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993) (stating the "trial court has considerable discretion" in deciding whether to order separate trials).

[26] *Tarin v. RWI Constr., Inc.*, No. CV 12-145 CG/LAM, 2012 WL 12354227, at *2 (D.N.M. July 13, 2012); *see also Vivint*, 2023 WL 2955648, at *3.

be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for separate claims.[27]

Finding improper joinder is not necessary.[28] "[T]he question to be answered is whether severance will serve the ends of justice and further the prompt and efficient disposition of litigation."[29]

### B. *The Clayton Defendants' Motion to Sever Is Denied.*

1. The Rule 21 Factors Weigh Against Severance.

The factors above weigh against severance here. The fraud claims against the Clayton Defendants and the aiding and abetting claims against the Chesapeake Defendants necessarily arise out of the same alleged transaction and occurrence. The SEC claims the Chesapeake Defendants aided and abetted the Clayton Defendants' fraud.[30] The Complaint alleges "Clayton engaged in a securities fraud scheme to secretly amass and then illegally sell stock of small, publicly traded companies," and "[w]hile concealing his stock ownership, Clayton retained [the Chesapeake Defendants] to promote the stock to investors and to increase the price and trading volume of the stock. Clayton then illegally sold his shares in the public securities markets at inflated prices . . ."[31] The majority of the claims for relief involve this scheme.[32] For example, the Complaint alleges:

---

[27] *Newbold v. HealthEquity, Inc.*, No. 2:24-cv-103-DAK-JCB, 2025 WL 276364, at *6 (D. Utah Jan. 23, 2025) (quoting *Vivint*, 2023 WL 2955648, at *2).

[28] *Vivint*, 2023 WL 2955648, at *2 ("While Rule 21 is primarily directed towards misjoinder and nonjoinder of parties, courts have held that a finding of improper joinder is not a prerequisite for granting severance under Rule 21." (collecting cases)).

[29] *Id.* (quoting *Lifetime Prods.*, 2016 WL 5482226, at *3).

[30] *Complaint* ¶¶ 158–63 (Seventh and Eighth Claims for Relief against Chesapeake Defendants for aiding and abetting the Clayton Defendants' fraud scheme).

[31] *Id.* ¶ 1.

[32] *Id.* ¶¶ 140–77. Only two of the eleven claims for relief against Defendants do not involve this scheme: counts five and eleven. *Id.* ¶¶ 152–54, 171–73 (insider trading and unlawful touting against the Chesapeake Defendants).

- "Clayton retained Rieu and Chesapeake to generate investor interest in the stock of companies that Clayton held and wanted to sell.  Clayton paid Chesapeake over $3.6 million between 2014 and 2024, including payments to Chesapeake that arrived from numerous Clayton Nominees."[33]

- "Rieu knew or was reckless in not knowing that Clayton was engaged in a microcap stock selling scheme. . . .  Rieu knew or was reckless in not knowing that Clayton retained Rieu and Chesapeake to promote stocks because Clayton held those stocks and wished to sell them into an inflated market."[34]

- "In 2023, Clayton learned of the Commission's investigation that led to this action and accordingly directed Rieu to acquire a burner phone to discuss their ongoing activities, and Rieu obliged because he knew or was reckless in not knowing that he and Clayton had been involved in illegal activity."[35]

- "Clayton compensated Rieu and Chesapeake according to the average price and total trading volume of the stock, thus incentivizing Rieu and Chesapeake to artificially inflate both price and trading volume.  Acting accordingly, Rieu traded in stock of Flexpoint and ForeverGreen with the intent of artificially inflating their stock price and trading volume." [36]

These alleged facts clearly show the fraud claims against the Clayton Defendants and the Chesapeake Defendants arise from the same occurrence: the alleged fraud scheme.  These allegations also demonstrate the claims involve common questions of law and fact.  Indeed, an element of the aiding and abetting claim is that the Clayton Defendants committed fraud.[37]  Proving the Clayton Defendants' scheme and the Chesapeake Defendants' role will require testimony from the same witness and documentary evidence.  Accordingly, the court concludes these claims "are so intertwined . . . as to be inseparable."[38]  Because the fraud claims arise from the same fraud scheme and involve the same questions of law and fact, judicial economy is

---

[33] *Id.* ¶ 66.

[34] *Id.* ¶ 67.

[35] *Id.* ¶ 68.

[36] *Id.* ¶ 69.

[37] *See SEC v. Autocorp Equities, Inc.*, 292 F. Supp. 2d 1310, 1331 (D. Utah 2003) (explaining "aiding and abetting liability under federal securities law" requires the SEC to show "that a principal committed a primary violation").

[38] *Vivint*, 2023 WL 2955648, at *4 (quoting *Okla. Turnpike Auth. v. Burner*, 259 F.3d 1236, 1243 (10th Cir. 2001)).

served by not severing.[39]  Further, although not required, all claims have been properly joined under the Federal Rules of Civil Procedure.[40]

The insider trading claim against the Chesapeake Defendants does not require severance.[41]  This claim alleges the Chesapeake Defendants were "acting separately from Clayton's scheme" when they "engaged in insider trading" and "artificially increase[d] the price and trading volume of client Pressure BioSciences' stock."[42]  The Clayton Defendants argue this admission shows the claims "fail the same transaction or occurrence test relative to the Clayton Defendants."[43]  This argument is unpersuasive.  The Clayton Defendants' Motion entirely ignores the aiding and abetting claims against the Chesapeake Defendants.[44]  Indeed, the Clayton Defendants' Motion represents, "The Clayton Defendants, who are accused of registration and beneficial ownership disputes involving their own entities, have been stapled to a separate, inflammatory fraud against co-defendant Timothy Rieu . . . ."[45]  But, contrary to the Motion's

---

[39] *See, e.g.*, *United States v. Yurek*, 925 F.3d 423, 436 (10th Cir. 2019) (stating in a criminal case that "joint trials are ordinarily more efficient in cases where the evidence against multiple defendants is overlapping and intertwined" (citation modified)).

[40] The Clayton Defendants' Motion alludes to improper joinder.  *See Clayton Defendants' Motion* at 8 ("The main commonality between Clayton's alleged registration violations and Rieu's independent insider trading is that Rieu is a named defendant in both.  The presence of a common defendant, without a common series of transactions, is insufficient to satisfy Rule 20.").  The court disagrees.  The Chesapeake Defendants were properly joined because the aiding and abetting claims against the Chesapeake Defendants and the fraud claims against the Clayton Defendants arise out of the same alleged fraud scheme.  *See* Fed. R. Civ. P. 20(a)(2) (permitting joinder of parties when the asserted right to relief "aris[es] out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action").  The insider trading and touting claims against the Chesapeake Defendants were then properly joined under Rule 18.  *See* Fed. R. Civ. P. 18(a) ("A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party.").

[41] *See Clayton Defendants' Motion* at 8.

[42] *Complaint* ¶¶ 71, 122.  All parties agree this claim is unrelated to the Clayton Defendants' fraud scheme.  *Clayton Defendants' Reply* at 2 ("[T]he Chesapeake Defendants explicitly concede . . . the insider trading allegations against Rieu involve 'wholly-distinct legal issues.'" (quoting *Chesapeake Defendants' Opposition* at 4)).

[43] *Clayton Defendants' Motion* at 8.

[44] *Compare id.*, *with Complaint* ¶¶ 158–63.

[45] *Clayton Defendants' Motion* at 2–3; *see also id.* at 5 ("[T]he SEC now seeks to legitimize this unlawful investigation by improperly joining the Clayton Defendants' alleged registration and ownership claims to a separate, inflammatory fraud case involving Rieu's purported theft of secrets from third parties."); *id.* at 9, 17.

representations, the Clayton Defendants are alleged to engage in a securities fraud scheme with scienter.[46]  And the Chesapeake Defendants are alleged to have aided and abetted this scheme. The same scheme is the center of both claims.  This distinguishes the facts here from *SEC v. Pignatiello*,[47] a case the Clayton Defendants rely on.[48]  There, the court severed the fraud claims because the two different schemes "involved different co-defendants, different common stock, a different contract and a different method of compensating [the defendant]," such that "the two schemes [had] few factual similarities."[49]  Here, the majority of the claims involve a single securities fraud scheme that every defendant participated in.  The facts of these claims largely overlap.  And the SEC "anticipates the bulk of its case at trial will concern" this common scheme.[50]  The joinder of the insider trading claim does not obviate the fact that the rest of the claims all involve the same fraud scheme.

The court is also not persuaded by the Clayton Defendants' prejudice argument.  First, the Clayton Defendants argue they are prejudiced financially by forcing their attendance at depositions across the country and reviewing discovery unrelated to the claims against them.[51] But as the SEC points out, the Clayton Defendants need not attend depositions unrelated to them or could attend remotely to reduce the financial burden, and the Clayton Defendants need not review discovery that is only relevant to the Chesapeake Defendants.[52]  Second, the Clayton

---

[46] *See Complaint* ¶ 3 (alleging "Clayton's sales were intended to defraud investors" and Clayton "deliberately avoided fundamental safeguards under the federal securities laws"); *id.* ¶¶ 141, 147, 150.

[47] No. 97 CIV. 9303(SWK), 1998 WL 293988 (S.D.N.Y. June 5, 1998).

[48] *Clayton Defendants' Motion* at 9–10.

[49] *Pignatiello*, 1998 WL 293988, at *3.

[50] *SEC Opposition* at 6.

[51] *Clayton Defendants' Motion* at 12.

[52] *SEC Opposition* at 6–7.  The Clayton Defendants did not address this argument in their response.  *See Clayton Defendants' Reply*.

Defendants argue a jury will be confused by the different claims and inflamed by the fraud claims against the Chesapeake Defendants.[53]  The court finds this argument is better addressed under the request for a separate trial under Rule 42—and not to justify severance under Rule 21—which the court will discuss shortly.[54]

2.  The Clayton Defendants' Constitutional Argument Does Not Establish Severance Is the Proper Relief.

The Clayton Defendants also argue severance is appropriate to remedy the Fourth and Fifth Amendment violations that "created the improper joinder now before the court," and they should not be "forced to defend against allegations derived from a constitutionally defective process alongside a properly authorized fraud case."[55]  First, as explained above, there is no improper joinder to be fixed.  Second, even assuming a constitutional violation occurred, the Clayton Defendants fail to explain how severance is the proper remedy.[56]  The Motion cites no authority—precedential, persuasive, or otherwise—suggesting a court can order severance to remedy a constitutional violation, and the court is aware of none.  The court may sever under Rule 21, but the Clayton Defendants do not attempt to bring this constitutional argument within their Rule 21 factors analysis.[57]  Without such authority, the court is unpersuaded that severance would remedy the alleged constitutional violation.  Severance does not dismiss the case.  If the court ordered severance, the Clayton Defendants would still be defending allegations that were

---

[53] *Clayton Defendants' Motion* at 13–14; *see also Clayton Defendants' Reply* at 5.

[54] *See infra* Section I.C.

[55] *Clayton Defendants' Motion* at 15; *see also Clayton Defendants' Reply* at 9 ("By pivoting from a fraud investigation of Rieu (the matter properly under inquiry) into an investigation of Clayton (a matter wholly distinct), the SEC exceeded the 'reasonably relevant' boundary set by *Morton Salt*.  Severance is the only remedy that prevents the SEC from using the fruits of that constitutional violation to prejudice the Moving Defendants.").

[56] *See Clayton Defendants' Motion*.

[57] *Compare id.* at 5–14 (discussing authority to sever under rule 21 and applying factors), *with id.* at 14–18 (arguing constitutional violation and seeking severance to remedy).

derived from this allegedly constitutionally defective process.  The Chesapeake Defendants may still be witnesses to the claims against the Clayton Defendants.  Accordingly, even if a constitutional violation exists—which the court does not decide today—the Motion fails to establish severance would be the proper remedy.

Therefore, the Motion to Sever is denied.

### C.  *The Clayton Defendants' Motion for Separate Trials Is Also Denied.*

The Clayton Defendants alternatively ask the court to order separate trials under Rule 42(b).[58]  The court declines to order this remedy at this time.  The request for separate trials largely fails for the reasons the Motion for severance fails above.

The Clayton Defendants argue the jury will be prejudiced against them if they are co-defendants with the Chesapeake Defendants, because the jury "will have considerable difficulty parsing out what evidence is actually relevant to the Clayton Defendants," the jury might "impute[] Rieu's intent and culpability onto Clayton despite the lack of any factual connection," and the jury will be "confused."[59]  The court is unconvinced.  The majority of the claims center on the fraud scheme that is relevant to all Defendants.  The SEC anticipates the bulk of the trial will be devoted to proving this scheme.[60]  While some evidence will be relevant to only the insider trading claim, the court is confident a limiting instruction to the jury will sufficiently quell this concern.[61]  Courts must "proceed on the basis that the jury will follow the court's

---

[58] *Id.* at 2.

[59] *Id.* at 13–14; *see also Clayton Defendants' Reply* at 5.

[60] *SEC Opposition* at 6.

[61] *See United States v. Brooks*, 736 F.3d 921, 941 (10th Cir. 2013) ("[A]bsent a showing to the contrary, we presume jurors will conscientiously follow the trial court's instructions." (internal quotations omitted)); *Smith v. BNSF Ry. Co.*, No. 17-cv-00977-KMT, 2019 WL 5063468, at *2 (D. Colo. Oct. 8, 2019) ("While the court agrees that some evidence would be relevant to one claim and not necessarily to the other, courts routinely handle these matters through limiting instructions to the jury that the parties will be instrumental in preparing.  This court disagrees that limiting instructions in this case will be too complicated for a jury to understand.").

instructions where those instructions are clear and the circumstances are such that the jury can reasonably be expected to follow them."[62]  The court is unconvinced that the claims and facts here are too complicated for a jury to navigate with well-written jury instructions.

The Motion for separate trials is denied.  But, if after discovery concludes and dispositive motions are resolved, the allegations prove to be insufficiently connected or there is further evidence of prejudice, any party may file a new motion for separate trials under Rule 42.[63]

D.  *The Request to Stay Discovery Is Denied as Moot.*

The Clayton Defendants' Motion also asks the court to stay discovery while the Motion is pending.[64]  Because this order resolves the Motion, this request is denied as moot.

## II.     The Ancillary Motions to Sever Are Denied.

The Ancillary Motions to Sever seek severance, and alternatively separate trials, "[f]or the reasons stated in the [Clayton Defendants'] Motion."[65]  The SEC filed a single omnibus opposition to the Ancillary Motions to Sever, which stated, "The Court should deny the Motions for the same reasons stated in the Commission's opposition to Clayton's motion."[66]  The court agrees with the SEC.  Accordingly, for all the reasons the Clayton Defendants' Motion is denied, the Ancillary Motions to Sever are also denied.

---

[62] *Bruton v. United States*, 391 U.S. 123, 135 (1968) (quotation and citation omitted).

[63] *See Miller v. Power*, No. 2:20-cv-00210-DBB, 2021 WL 3549882, at *2 (D. Utah Aug. 11, 2021).

[64] *Clayton Defendants' Motion* at 19.

[65] *Defendant Donald H. Perry's Motion to Join First Equity Holdings Corporation and John Clayton's Motion to Sever* at 2; *see also Defendant Daniel Jackson and Relief Defendants' Bryan Development, LLC, Greenwich Street Commercial Mortgage, LLC, and Klaja Partners, LLC's Motion to Sever Proceedings* at 2 (seeking severance "[f]or the reasons set forth in the Clayton [Defendants'] Motion to Sever"); *Motion and Joinder of Defendant Standard Registrar & Transfer Company, Inc. in Motions to Sever* at 1 (seeking severance by "adopt[ing] by reference the motions, argument, and relief sought by" the Clayton Defendants).

[66] *SEC Omnibus Opposition* at 2.

### III.    The SEC's Motion for Leave Is Granted.

The SEC seeks leave to file the Amended Complaint.[67]  The Clayton Defendants and Defendant Investrio Inc. oppose the motion.[68]  As represented by the SEC, "The most substantive revision to the Complaint is to correct the statement that John Clayton never sold stock of the company LZG International, when he in fact did, and to allege that—in addition to the other fraudulent steps he took—he also forged a bank statement."[69]

#### A.  Legal Standard

"The court should freely give leave [to amend] when justice so requires."[70]  Whether to grant a party's request to amend the pleadings "is within the discretion of the trial court."[71]  The purpose "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."[72]  The Supreme Court has explained that parties "ought to be afforded an opportunity to test [their] claim on the merits," unless the nonmoving party can demonstrate "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment[.]"[73]

---

[67] *SEC Motion for Leave*; *see also* Dkt. 120-2, *Amended Complaint*.

[68] *Clayton Defendants' Opposition*.

[69] *SEC Reply* at 2.  After reviewing the Amended Complaint, the court agrees these are the substantive additions. *See Amended Complaint*.  Further, the memorandum in opposition focuses on these amendments.  *See Clayton Defendants' Opposition*.

[70] Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

[71] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quotation and citation omitted).

[72] *Id.* (internal quotation marks and citation omitted).

[73] *Foman*, 371 U.S. at 182.

Here, the Clayton Defendants argue the SEC's Motion for Leave should be denied for undue delay, undue prejudice, bad faith, and futility. The court addresses, and rejects, each argument in turn.

### B. Undue Delay

The Clayton Defendants and Investrio first argue amendment should be denied for undue delay.[74] A party's ability to amend its pleadings is not restricted to a particular stage in the action.[75] Lateness generally does not justify denying leave to amend.[76] However, "untimeliness alone [can be] a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay."[77] For example, leave should be denied if the moving party knew "the facts upon which the amendment is based" when the operative complaint was filed.[78]

The Clayton Defendants and Investrio argue an amendment would cause undue delay because the SEC "took testimony from various parties regarding [the accounts in the new allegations] as early as May and June 2024," and Clayton "produced the [relevant] bank statement . . . in April of 2024."[79] But the SEC provides an adequate explanation: the SEC "discovered during litigation that Clayton forged a version of these records" that were previously

---

[74] *Clayton Defendants' Opposition* at 3–4.

[75] *See Minter*, 451 F.3d at 1205.

[76] *Id.*

[77] *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) (citation modified); *see also Minter*, 451 F.3d at 1205–06 (explaining the Tenth Circuit "focuses primarily on the reasons for the delay. . . . [D]enial of leave to amend is appropriate when the party filing the motion has no adequate explanation for the delay." (citation modified)).

[78] *Pallottino*, 31 F.3d at 1027.

[79] *Clayton Defendants' Opposition* at 3–4.

investigated, and it did not previously know the document was forged because the "very nature of forgery is that it is concealed."[80]  Accordingly, the undue delay argument is unpersuasive.

### C. Undue Prejudice

The Clayton Defendants and Investrio next argue they would be unduly prejudiced should the court permit amendment.[81]  When deciding a motion to amend the pleadings, the most important factor "is whether the amendment would prejudice the nonmoving party."[82]  "Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense."[83]  This occurs most often "when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues."[84]  A party is not prejudiced if "the subject matter of the amendment was already alleged in the complaint."[85]  The nonmoving party bears the burden of showing prejudice.[86]

The Clayton Defendants and Investrio argue they would be unduly prejudiced because the Amended Complaint "introduces an entirely new species of liability: forgery."[87]  The court disagrees.  The Amended Complaint does not add a new cause of action for forgery—in fact, the Amended Complaint does not add any new causes of action.  Instead, the new factual allegation that Clayton forged a document supports the pre-existing fraud causes of action.  The amended

---

[80] *SEC Reply* at 2.

[81] *Clayton Defendants' Opposition* at 4–5.

[82] *Minter*, 451 F.3d at 1207.

[83] *Id.* at 1208 (internal quotation marks and citation omitted).

[84] *Id.*

[85] *Childers v. Indep. Sch. Dist. No. 1,* 676 F.2d 1338, 1343 (10th Cir. 1982); *see also Gillette v. Tansy*, 17 F.3d 308, 313 (10th Cir.1994) (finding no prejudice when the amended "claims track the factual situations set forth in his [original] claims").

[86] *Carefusion 213, LLC v. Pro. Disposables, Inc.*, No. 09-2616-KHV-DJW, 2010 WL 4004874, at *4 (D. Kan. Oct. 12, 2010).

[87] *Clayton Defendants' Opposition* at 4.

allegations merely set forth evidence revealed during discovery that tracks the fraud scheme alleged in the operative complaint.  Because the new factual allegations arise from the subject matter alleged in the original complaint, there is no undue prejudice here.

The Clayton Defendants and Investrio also argue they would be unduly prejudiced because allowing the forgery allegations would expand discovery, which is scheduled to close on April 17, 2026.[88]  They rely on *United States ex rel. Ritchie v. Lockheed Martin Corp.*[89]  There, the Tenth Circuit concluded the district court did not abuse its discretion in denying a motion for leave to amend that was filed "after the close of a long discovery period and after [the defendant] had filed a motion for summary judgment."[90]  The Circuit concluded granting the motion would have prejudiced the defendant, because "the proposed amendment would have required the reopening of discovery," and the defendant's "time and effort in preparing the summary judgment motion would have been wasted."[91]  Neither of the considerations that existed in *Ritchie* exist here.  The Motion for Leave was timely under the Scheduling Order and filed three months prior to the close of fact discovery.[92]  Further, no dispositive motions have been filed.  Therefore, the court concludes the Clayton Defendants will not be unduly prejudiced by permitting amendment.

### D.  Bad Faith

The Clayton Defendants and Investrio also argue the court should deny leave to amend because the "motion is a dilatory tactic filed in bad faith to defeat the pending motion to sever."[93]

---

[88] *Id.* at 5.

[89] 558 F.3d 1161 (10th Cir. 2009).

[90] *Id.* at 1166–67.

[91] *Id.* at 1166.

[92] *See SEC Motion for Leave*; *Amended Scheduling Order.*

[93] *Clayton Defendants' Opposition* at 5.

The court may deny leave to amend if bad faith is "apparent from the record before the court."[94] "[T]here is little guidance in the Tenth Circuit as to what constitutes bad faith for purposes of a Rule 15 motion."[95]  Courts have found bad faith when "the proposed amendments directly contradict the allegations made in the original pleading such that the original and amended factual accounts cannot be reconciled, and are made solely to circumvent a defense raised in a Rule 12(b) motion."[96]  In *Viernow v. Euripides Development Corp.*,[97] the Tenth Circuit instructed that leave to "salvage a lost case by untimely suggestion of new theories of recovery, especially after the trial judge has already expressed adverse rulings" are disfavored.[98]

Relying on *Viernow*, the Clayton Defendants and Investrio argue the Motion for Leave attempts to circumvent the Motion to Sever and "salvage a lost case regarding joinder."[99]  This argument fails.  For all the reasons above, the Clayton Defendants' Motion is denied.  The SEC does not assert a "lost case" in need of salvaging—irrespective of whether the court grants leave.

### E.  Futility

Finally, the Clayton Defendants and Investrio argue leave should be denied as futile.[100] Amendment is futile if the proposed amended pleading "would be subject to dismissal."[101]  A

---

[94] *Albines v. Hotelengine, Inc.*, No. 25-cv-02409-CNS-NRN, 2025 WL 2959292, at *2 (D. Colo. Oct. 17, 2025) (quotation and citation omitted).

[95] *CVB Inc. v. Corsicana Mattress Co.*, No. 1:20-cv-00144-DBB-DAO, 2024 WL 1436491, at *2 (D. Utah Apr. 3, 2024) (quoting *First Am. Mortg., Inc. v. First Home Builders of Fla.*, No. 10-cv-00824-REB-MEH, 2010 WL 5230902, at *3 (D. Colo. Dec. 15, 2010)).

[96] *Albines*, 2025 WL 2959292, at *2 (quotation and citation omitted); *see also Wireless Advance Vehicle Electrification, LLC v. WiTricity, Corp.*, No. 2:24-cv-00577-RJS-CMR, 2025 WL 895322, at *3 (D. Utah Mar. 24, 2025) (explaining "bad faith may be inferred if the proposed amendments directly contradict the allegations made in the original pleading such that the original and amended factual accounts cannot be reconciled").

[97] 157 F.3d 785 (10th Cir. 1998).

[98] *Id.* at 800.

[99] *Clayton Defendants' Opposition* at 6.

[100] *Id.* at 6–7.

[101] *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Inv'r's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).

16

complaint is subject to dismissal under Rule 12(b)(6) when it "fail[s] to state a claim upon which relief can be granted."[102]  A complaint is not subject to dismissal when it "state[s] a claim to relief that is plausible on its face," that is, when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[103]  The party asserting futility bears the burden.[104]

The Clayton Defendants and Investrio argue futility because the Amended Complaint is "subject to the same dispositive defense currently pending before the court."[105]  But there is no dispositive defense before the court.  The Clayton Defendants' Motion seeks severance or separate trials—not dismissal.[106]  Further, the court denied the Clayton Defendants' Motion in its entirety.[107]  Because the relief sought in that Motion is denied, the futility argument necessarily fails.[108]

Therefore, the Clayton Defendants and Investrio fail to show leave should not be granted. Accordingly, the SEC's Motion for Leave is granted.

### CONCLUSION

For the foregoing reasons, the Clayton Defendants' Motion[109] is DENIED: the motion to sever is denied, the motion for separate trials is denied without prejudice, and the request to stay

---

[102] Fed. R. Civ. P. 12(b)(6).

[103] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified).

[104] *Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 953 F. Supp. 2d 1176, 1181 (D. Kan. 2013), *aff'd*, 810 F.3d 1161 (10th Cir. 2016) ("The burden of showing futility rests with the [party] who assert[s] this ground in opposing . . . leave to amend." (quotation and citations omitted)).

[105] *Clayton Defendants' Opposition* at 6.

[106] *See Clayton Defendants' Motion* at 1–2.

[107] *See supra* Part I.

[108] *See Clayton Defendants' Opposition* at 7 ("[I]f the court grants the relief sought in the Motion to Sever, the Amended Complaint would be subject to the same dismissal or severance.").

[109] Dkts. 99, 101.

discovery is denied as moot.  The Ancillary Motions to Sever[110] are also DENIED.  The SEC's

Motion for Leave to Amend[111] is GRANTED.  The SEC must file the Amended Complaint

appended to the Motion within 7 days.


        SO ORDERED this 23rd day of March, 2026.

                BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge

---

[110] Dkts. 108, 109, 111.

[111] Dkt. 120.